**SO ORDERED.**

**SIGNED this 14 day of July, 2014.**

$\underline{\hspace{4cm}\textit{Stephani A. Humrickhouse}\hspace{4cm}}$
**Stephani W. Humrickhouse**
**United States Bankruptcy Judge**

___

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

IN RE:

SHOTWELL LANDFILL, INC.,                CASE NO. 13-02590-8-SWH
                                        CHAPTER 11
    DEBTOR


ORDER REGARDING OBJECTION TO CLAIM
OF DOUBLE "J" ENTERPRISES, INC.

This matter came before the court upon the objection of the debtor, Shotwell Landfill, Inc., to the claim of Double "J" Enterprises, Inc. ("Double J"). A hearing was held on March 25-27 and April 1, 2014, in Raleigh, North Carolina. For the reasons that follow, the objection to claim will be allowed in part and denied in part.

Shotwell Landfill, Inc. filed a petition for relief under chapter 11 of the Bankruptcy Code on April 19, 2013. Double J filed its second amended proof of claim on March 19, 2014 for $500,000 for monies it alleges it is owed by the debtor for conversion, wrongful concealment, wrongful use, and wrongful sale of a truck and dumpsters.[1] On March 24, 2014, the debtor filed an

---

[1] On August 16, 2013, Double J timely filed its original proof of claim, asserting an unsecured claim in the amount of $50,000. On November 26, 2013, Double J filed its first amended claim in the amount of $150,000.

objection to the claim generally denying the validity of the claim, asserting that it is not in possession of the equipment and that it owes nothing to Double J.

## BACKGROUND

The debtor owns and operates a landfill located in Wake County, North Carolina, and is managed through its principal, David King. Mr. King is also the owner of several other entities which assist the debtor in its operation of the landfill (the "Debtor Entities"). The services that these entities provide include grading services, trash and garbage collection, and serving as "transfer stations," where garbage is held until it is ultimately transferred to the debtor's landfill. All of the cash related to each entity of the landfill operation flows to the debtor.

Double J, a construction company from Lake Worth, Florida, conducted business in North Carolina from approximately 2006 or 2007 until 2008.[2] During this time, Double J had a business relationship with the debtor for the disposal of construction debris. Double J employed approximately 136 ten cubic yard dumpsters (mostly colored yellow and some of which had "East Coast" written on them, which is referred to by the owners of Double J as the name of a company they previously owned), as well as a Volvo truck used for debris removal services in its North Carolina operations. In 2008, Double J ceased doing business in North Carolina. At the time that Double J ceased its North Carolina operations, it left the Volvo truck on the property of one of the Debtor Entities and approximately 136 dumpsters ("containers") on job sites. (The truck and containers are referenced collectively herein as, "the property" or "its property").

---

[2] The evidence as to the dates of Double J's operations in North Carolina is unclear. A member of Double J, Henry Treccioli, testified that Double J operated in North Carolina from 2007 to 2008. The debtor's principal David King, however, testified that Double J began such operations in 2004 or 2006.

On June 27, 2010, Kenny Randolph (a friend of former Double J attorney, Peter Till) traveled to the debtor's landfill and requested entry for the purpose of inventorying Double J's containers and locating the Volvo truck. He was denied entry by an employee of the debtor. From 2010 to 2012, the title to the truck changed hands multiple times. Cooter's Towing obtained title to the truck in April 2010 pursuant to a state court order that directed the transfer of title from Double J to Cooter's Towing in order to satisfy a lien for towing and storage fees of that truck. Debris Removal Partners, LLC obtained title in August 2010, and title was transferred to the debtor in October 2012. In August 2012, Double J filed a complaint against the debtor in Wake County District Court for the recovery of its property and monetary damages. Double J was administratively dissolved in Florida in September 2009, but was reinstated in March 2014.

Double J claims that the debtor wrongfully converted its property, fraudulently concealed it, wrongfully used it, and wrongfully sold a portion of the property. The debtor denies that it owes Double J anything and asserts four defenses:1) Double J has no standing to file its claim; 2) Double J's claims are barred by the statute of limitations; 3) Double J has abandoned its property and therefore can assert no claim to it; and 4) Double J's claims regarding the truck are barred by state court rulings pursuant to the *Rooker-Feldman* doctrine.

## DISCUSSION

Section 502 of the Bankruptcy Code provides a statutory basis for the allowance or disallowance of claims, and Fed. R. Bankr. P. 3001 sets forth the requisite form and content of a proof of claim. 11 U.S.C. § 502; Fed. R. Bankr. P. 3001. Rule 3001(a) defines a proof of claim as a "written statement setting forth a creditor's claim" and subsection (c) states in part that "[w]hen

3

a claim . . . is based on a writing, a copy of the writing shall be filed with the proof of claim." Fed. R. Bankr. P. 3001(a), (c). Proofs of claim which are filed and executed in accordance with the rules constitute *prima facie* evidence of the validity and amount of the claim. Id. at 3001(f). The claim allowance process and the applicable burden of proof was explained by the Fourth Circuit in In re Harford Sands Inc.:

> The Bankruptcy Code establishes a burden–shifting framework for proving the amount and validity of a claim. The creditor's filing of a proof of claim constitutes prima facie evidence of the amount and validity of the claim. 11 U.S.C. § 502(a); Fed. R. Bankr. P. 3001(f). The burden then shifts to the debtor to object to the claim. 11 U.S.C. § 502(b). The debtor must introduce evidence to rebut the claim's presumptive validity. Fed. R. Bankr. P. 9017; Fed. R. Evid. 301. If the debtor carries its burden, the creditor has the ultimate burden of proving the amount and validity of the claim by a preponderance of the evidence.

372 F.3d 637, 640 (4th Cir. 2004) (internal citations omitted).

In the present case, Double J's claim contains the information required by Rule 3001(c) including a depreciation and amortization schedule listing the alleged property upon which the claim is based, rendering the claim presumptively valid under Rule 3001(f). Thus, the burden shifts to the debtor to object to the claim. The debtor's objection contains sufficient evidence in accordance with § 502 to rebut the presumptive validity of the claim. Therefore, Double J has the burden to prove the amount and validity of its claim by a preponderance of the evidence.

**Standing**

Insomuch as it may be dispositive, the court will first address the issue of standing. The debtor contends that because Double J was an administratively dissolved corporation at the time it filed its proof of claim, it has no standing to file the proof of claim and therefore its claim should be disallowed. See South Mecklenburg Painting Contractors, Inc. v. Cunnane Group, Inc., 134 N.C.

App. 307, 517 S.E. 2d 167 (1999) (Plaintiff sued defendant and was barred from enforcing a contract entered into while its articles of incorporation were suspended because North Carolina statute precluded a corporation from carrying on business as usual during a period of suspension).

The debtor asserts that its standing defense should be evaluated under Fla. Stat. Ann. § 607.1421 which provides that, "A corporation administratively dissolved continues its corporate existence but may not carry on any business except that necessary to wind up and liquidate its business and affairs under s. 607.1405 and notify claimants under s. 607.1406." Fla. Stat. Ann. § 607.1421(3) (West 2009).  The debtor claims that Double J may not properly assert that it was winding up its business when it filed its proofs of claim in this case because it waited almost three years from its dissolution in 2009 to do so.  See Fla. Stat. Ann. § 607.1421(3) (West 2009).

Double J responds by stating that its reinstatement as a Florida corporation in 2014 relates back and is effective as of the date of the administrative dissolution.[3] Double J further contends that reinstatement allows it to carry on business as if the administrative dissolution had never occurred, and thus it has standing to bring its claim. Double J cites Fla. Stat. Ann. § 607.1422 which provides, "When the reinstatement is effective, it relates back to and takes effect as of the effective date of the administrative dissolution and the corporation resumes carrying on its business as if the administrative dissolution had never occurred." Fla. Stat. Ann. § 607.1422(3) (West 2013).

Double J is a Florida corporation and its right to assert claims is governed by the laws of the State of Florida. See Fla. Stat. Ann. § 607.1701 (West).  Double J is a reinstated corporation in

---

[3] The court notes with interest that Double J chose to reinstate its corporate existence under Florida law during the hearings on the debtor's objection to its claim.  However, in light of the relation back of such reinstatement, the court finds that ultimately the timing of the reinstatement is of no legal import.

5

Florida, thus, this situation is governed by Fla. Stat. Ann. § 607.1422(3) (West 2013), not Fla. Stat. Ann. § 607.1421(3) (West 2009), which only applies to dissolved corporations. Once Double J became validly reinstated as a corporation under Florida law, such reinstatement related back to the date of dissolution and thus it has standing to pursue its claim in this case.

**Statute of Limitations**

The debtor contends that Double J did not bring its conversion cause of action within the applicable statute of limitations and that such cause of action is therefore barred. Double J asserted a conversion cause of action against the debtor in the state court action it initiated in August 2012, and conversion is a basis for its proof of claim as well. The parties agree that the statute of limitations for conversion in North Carolina is three years, pursuant to N.C. Gen. Stat. § 1-52(4) (2010), but disagree as to the accrual date of the cause of action. The burden is on Double J to prove that its claim was brought within the statute of limitations. Harford Sands, 372 F.3d at 640.

The debtor maintains that it lawfully obtained the property by virtue of Double J's abandonment of the same in 2008 and therefore any cause of action for conversion began to accrue at that time. See Stratton v. Royal Bank of Canada, 211 N.C. App. 78, 712 S.E. 2d 221 (2011). If the cause of action accrued in 2008, the three year limitation period of N.C. Gen. Stat. § 1-52(4) (2010) ran in 2011, prior to the initiation of the state court lawsuit. There is no dispute regarding lawful possession. However, the debtor contends the property was abandoned and Double J maintains that the containers were left for debtor's use and the truck was simply left at the landfill. It is Double J's position that the debtor came into possession of the property in 2008, but lawful possession ceased in 2010 when demand was made for its return and was refused. Double J therefore argues that the statute of limitations on its conversion claim began to accrue at the point of refusal,

and because the state court lawsuit was filed in 2012, it was timely filed. Therefore, a determination of whether there was an abandonment of the property in 2008 is necessary for a proper statute of limitations analysis.

Since abandonment is asserted as a defense to the conversion claim, the burden is on the debtor to prove by a preponderance of evidence that Double J abandoned the containers and the truck. Porter v. Porter, 2008 U.S. Dist. LEXIS 27663, *32-*33 (W.D.N.C. Apr. 4, 2008). A party seeking to establish abandonment of property must show: 1) intent to abandon; and 2) an act manifesting such intent. St. Peter's Church v. Bragaw, 144 N.C. 126, 129 (N.C. 1907). In other words, the property owner must unequivocally renounce his claim to the property, through conduct inconsistent with his claim to title. Banks v. Banks, 77 N.C. 186, 187 (N.C. 1877). Intent is an essential element; the owner must intend to relinquish the property permanently. State v. West, 293 N.C. 18, 24 (N.C. 1977). The mere lapse of time in asserting one's claim to property, unaccompanied by acts or conduct inconsistent with one's rights does not constitute waiver or abandonment of the property. Williams v. Williams, 72 N.C. App. 184, 187-88 (N.C. Ct. App. 1984) (citing to Banks v. Banks, 77 N.C. 186, 187 (N.C. 1877).

The debtor offered the testimony of David King to support its contention of abandonment, while Double J offered the testimony of John Brown and Henry Treccioli. The court's perception of the arrangement between the debtor and Double J when Double J ceased business in North Carolina, is that it was, at best, a loose one. Double J left its containers on worksites and invited the debtor to use them. Several years passed before Double J attempted to contact the debtor about the containers or the Volvo truck. Although the court strongly believes that Double J should have taken

7

better care of its property during this period, it cannot find that its inattentiveness constitutes an unequivocal act or conduct inconsistent with its claim of title to the containers.

As to the truck, there is undisputed evidence that Treccioli took both the license plate and keys with him when he left North Carolina. The court could reasonably interpret such conduct as evidencing an intent to turn plates in to the Florida department of motor vehicles so that the truck could be retitled in the debtor's name **or** as evidencing an intent to insure that the debtor could not assert title to the truck. The conduct of Double J regarding the truck is far from unequivocal. Thus the debtor has failed to carry its burden to prove that an abandonment occurred in 2008.

Under North Carolina law, in a conversion cause of action where the defendant lawfully obtains possession of property, demand and refusal are necessary elements of the tort; thus, the cause of action begins to accrue on the date of refusal by the defendant upon demand for the property by the plaintiff. See Stratton, 211 N.C. App. 78 at 83 (2011); see also White v. Consol. Planning, Inc., 166 N.C. App. 283, 289, 603 S.E.2d 147, 153 (2004). Double J does not dispute that the debtor lawfully obtained possession of the property but contends that the conversion occurred on June 27, 2010, when Mr. Randolph made a demand for access to the property and the debtor refused; i.e., the date of the debtor's unauthorized assumption and exercise of ownership of the property. Stratton, 211 N.C. App. 78 at 83. The court agrees that the cause of action for conversion accrued on June 27, 2010, and thus since the complaint was initiated in August 2012, the cause of action was not time barred.

**Conversion Claim as to the Containers**

The court having determined that the debtor has not proven the defense of abandonment and that Double J's claim has been timely made, it must now determine whether Double J has proven

a claim for conversion. The elements necessary to prove conversion in North Carolina are: 1) "an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another;" 2) "to the alteration of their condition or the exclusion of an owner's rights." Stratton v. Royal Bank of Canada, 211 N.C. App. 78, 712 S.E. 2d 221 (2011) (citing Peed v. Burleson's, Inc., 244 N.C. 437, 439, 94 S.E.2d 351, 352 (1956)). Once Double J requested and was denied entry upon the debtor's premises for the purpose of inventorying the containers,[4] the debtor's continued possession constituted an unauthorized assumption and exercise of the right of ownership over the property to the exclusion of Double J's rights. Double J has proven a claim for conversion with regard to the containers.

**Conversion Claim as to the Truck**

Although debtor has been unable to satisfy its burden to show abandonment of the containers and truck, it has asserted that Double J is unable to prove conversion as to the truck because it cannot show ownership of the truck. This argument is based upon a state court order directing transfer of title of the truck out of Double J's ownership and the notion that the *Rooker-Feldman* doctrine prevents this court from relitigating that issue. The *Rooker-Feldman* doctrine is defined as, "[t]he rule that a federal court cannot consider claims actually decided by a state court or claims inextricably intertwined with an earlier state-court judgment." BLACK'S LAW DICTIONARY 1527 (10th ed. 2014) (citing Rooker v. Fidelity Trust Co., 263 U.S. 413, 415-16, 44 S.Ct. 149, 150 (1923); and District of Columbia Ct. of App. v. Feldman, 460 U.S. 426, 476, 103 S.Ct. 1303, 1311 (1983)). The Supreme Court has described the pattern of cases to which the *Rooker-Feldman* doctrine applies as follows:

---

[4] The court will discuss the cause of action for conversion of the truck below.

9

>       The losing party in state court file[s] suit in a U.S. District Court after
>       the state proceedings [have] ended, complaining of an injury caused
>       by the state-court judgment and seeking federal-court review and
>       rejection of that judgment.

Skinner v. Switzer, 131 S. Ct. 1289, 1297 (2011). "Under the *Rooker-Feldman* doctrine, lower federal courts generally do not have jurisdiction to review state-court decisions; rather, jurisdiction to review such decisions lies exclusively with superior state courts and, ultimately, the United States Supreme Court." Plyler v. Moore, 129 F.3d 728, 731 (4th Cir. 1997) (citations omitted). The debtor therefore maintains that this court may not review the state court order directing transfer of title from Double J to Cooter's Towing, and as such, the truck cannot form a basis for Double J's claim.

Cooter's Towing obtained possession of the truck in approximately 2009 when King requested that they remove it from debtor's property where it had been parked since Double J left North Carolina. The towing company obtained a lien on the truck for towing and storage fees after several months, and then sought authorization under state law to sell the truck to enforce its storage and towing lien. On Dec. 21, 2009, the sale was authorized by the Clerk of Wake County Superior Court. On April 22, 2010, Cooter's Towing filed a Report of Sale of Motor Vehicle, indicating that a public sale was held, and Cooter's Towing itself purchased the truck, essentially credit bidding the amount due on the lien. Based on that report of sale, the Clerk entered an Order Directing Transfer of Motor Vehicle Title from Double J to Cooter's Towing on April 22, 2010. If title was validly and properly transferred from Double J to Cooter's by state court order, this court may be precluded from reviewing that determination.

Double J argues that the state court order directing transfer of title from Double J to Cooter's Towing was invalid because Double J was not given proper notice of the proceeding. The *Rooker-Feldman* doctrine, however, dictates that this court lacks jurisdiction over that matter *even if* the

state court order was erroneous. Jordahl v. Democratic Party, 122 F.3d 192, 202 (4th Cir. 1997) ("'[I]f in order to grant the federal plaintiff the relief sought, the federal court must determine that the [state] court judgment was erroneously entered or must take action that would render the judgment ineffectual,' *Rooker-Feldman* is implicated" (citations omitted)); Garry v. Geils at 1366 (citing GASH Associates v. Vill. of Rosemont, Ill., 995 F.2d 726, 728 (7th Cir. 1993)). Accordingly, any issue that Double J had with the order directing transfer of title should have been raised before the state court when Double J became aware of the order. Because this court cannot review the state court determination of title, Double J cannot prove ownership of the truck and thus cannot show conversion of the truck.

**Unfair and Deceptive Trade Practices**

Double J alleges that the debtor committed unfair and deceptive trade practices when it wrongfully concealed, wrongfully used and wrongfully sold the truck and containers. Conversion in and of itself does not constitute an unfair or deceptive act or practice, there must be sufficient aggravating or egregious circumstances. Hancock v. Renshaw, 421 B.R. 738, 743 (M.D.N.C. 2009). Thus, the court's conversion determination is not conclusive of a finding of unfair or deceptive acts or practices. Unfair and deceptive trade practices are governed in North Carolina under N.C. Gen. Stat. § 75-1.1 (2013) which provides:

> (a) Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful.

N.C. Gen. Stat. Ann. § 75-1.1 (West).

In order to succeed under this statute, it is not necessary for a plaintiff to show fraud, bad faith, deliberate or knowing acts of deception, or actual deception; nevertheless, the plaintiff must show

11

that the acts complained of "'possessed the tendency or capacity to mislead, or created a likelihood of deception.'" Chastain v. Wall, 78 N.C. App. 350, 337 S.E.2d 150 (1985) (citations omitted). "A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." Marshall v. Miller, 302 N.C. 539, 549, 276 S.E.2d 397, 401 (1981). The debtor failed on its abandonment claim not because it offered no proof of abandonment, but because it could not prove abandonment by the preponderance of the evidence. Simply put, the evidence was not clear. Double J and the debtor had an informal, non-documented, and quite frankly, symbiotic relationship. The debtor came to Double J's aid when it was in a jam. It had ceased business in North Carolina and could not justify the cost of bringing its equipment back to Florida at that time. The debtor "took care" of Double J's property for it for several years. It appears that at some point in time, management at Double J came to the realization that it had assets with some value in North Carolina and sought recovery. Under these circumstances, the court is not prepared to find that the debtor acted unfairly and will deny Double J's unfair and deceptive trade practices claim.

**Damages**

The burden of proof ultimately falls on Double J to prove the amount and validity of its claim by a preponderance of the evidence. Harford Sands, 372 F.3d at 640; see In re Law Developers, LLC, No. 08-00965-8-JRL, 2008 WL 2570863, at *138 (Bankr. E.D.N.C. June 24, 2008) (slip op. at 2). Double J claims that it is owed $500,000 for the conversion of the containers and truck. Based on the court's finding of conversion as to the containers only, the burden of proof is on Double J to prove the amount and validity of its claim for the containers by a preponderance of the evidence. See Harford Sands, 372 F.3d at 640.

12

The court received varying evidence of the value of the containers. John Brown, former employee of the debtor testifying on behalf of Double J, stated that the fair market value of the containers in 2010 was between $800 and $1,000 per container. He also testified that the replacement value of the containers in 2014 is $2,000 per container. Mr. Treccioli testified also on behalf of Double J and stated that the present cost of similar containers (four years after the conversion) was between $1,300 and $1,500 per container. He also testified that the value of the containers at the time they were left with the debtor in 2008 was $1,000. King testified that the containers were worth $1,200 new, but were worth $400 to $500 when left on the debtor's property and would be worth that amount today. Upon consideration of all testimony, the court determines that the value of the containers at the time of the conversion in 2010 was $800 each. The evidence tends to show that there were 136 containers left on the debtor's premises by Double J for a total claim of $108,800.

Double J further contends that it is entitled to interest at the rate of 8.00% per annum from the date of conversion, treble damages pursuant to N.C. Gen. Stat. § 75-1.1 *et seq*. (N.C. Gen. Stat. § 75.16), attorney's fees pursuant to N.C. Gen. Stat. § 75-16.1, and rental income from the debtor's use of the containers from June 27, 2010 forward. However, Double J provides no evidence in support of its request for an 8.00% per annum interest rate, or rental income and such requests will be denied. Since the court did not find a claim of unfair or deceptive trade acts or practices, Double J is not entitled to treble damages or attorney fees.

## CONCLUSION

For the foregoing reasons, the court finds that the debtor's objection is **DENIED** as to Double J's claim for conversion of its containers, but is allowed in all other respects. Therefore, Double J shall have an allowed unsecured claim in the amount of $108,800.

**SO ORDERED**.

### END OF DOCUMENT